UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOARD OF TRUSTEES OF THE AFTRA RETIREMENT FUND, in its capacity as a fiduciary of the AFTRA Retirement Fund, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | No. 09-cv-00686<br><br>[PROPOSED] SCHEDULING ORDER<br><br>Conference Date: March 23, 2009 |

SHIRA A. SCHEINDLIN, U.S.D.J.

WHEREAS, the Court issued an Order for a Conference in accordance with Fed. R. Civ. P. 16(b) on February 23, 2009 (the "Order"); and

WHEREAS, the Order requires that the parties jointly prepare and sign a proposed scheduling order containing certain information;

NOW, THEREFORE, the parties hereby submit the following information as required by the Order:

(1)   The date of the conference and the appearances for the parties: March 23, 2009

      For plaintiff: **BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP**
                        Joseph H. Meltzer
                        Peter H. LeVan, Jr.

      For defendant: **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
                           Lewis R. Clayton
                           Jonathan H. Hurwitz

(2)   A concise statement of the issues as they then appear:

**By plaintiff**: AFTRA brings this action on behalf of a class of ERISA plans who participated in defendant's securities lending programs as of September 30, 2008. Pursuant to securities lending agreements, defendant loaned securities owned by class members to third-party borrowers in return for cash collateral. Defendant then invested, at its sole discretion, the cash collateral in an effort to generate an investment return in excess of the rebate paid to the third-party borrowers (*i.e.*, the return of the collateral). As compensation, defendant received a percentage of the investment revenues generated on the collateral. Defendant was a "fiduciary" of the AFTRA plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), because it had authority and control over plan assets.

1

Although the securities lending agreements expressly directed defendant to invest the cash collateral in conservative investments that would safeguard principal, defendant invested the class members' collateral in risky medium-term notes issued by Sigma Finance, Inc. ("Sigma") and continued to hold those investments notwithstanding numerous public warnings that Sigma was careening towards financial collapse. At the same time that defendant was purchasing and holding the Sigma notes on behalf of AFTRA and the class members, it was also providing repo financing directly to Sigma and taking security interests in Sigma's assets that were senior to those held by AFTRA and the other class members. In its role as repo financier of Sigma, defendant's financial interests were in direct conflict with the fiduciary responsibilities it owed to AFTRA and the class.

In October 2008, defendants withdrew its repo financing and caused Sigma to go into receivership, thereby resulting in substantial financial losses – in the hundreds of millions of dollars – to AFTRA and the class members. AFTRA therefore asserts various claims on behalf of the class for breaches of fiduciary duty, including multiple breaches of the duties of prudence and loyalty.

**By defendant**: JPMorgan Chase Bank, N.A. ("JPMC") provides AFTRA and other pension funds with the opportunity to increase the return on the securities they hold by loaning those securities to third-party borrowers on a secured basis and investing the collateral for the clients' benefit. AFTRA and the other putative class members elected to have their collateral invested in a commingled fund managed by JPMC called the CashCo Fund. The Securities Lending Agreements between JPMC and its securities lending clients, including AFTRA, explicitly state that the clients bear the risks of investing the cash collateral.

In May 2007, JPMC invested a small portion of the funds in CashCo in AAA-rated, medium term notes (the "Sigma MTNs") issued by Sigma Finance, Inc. and guaranteed by Sigma Finance Corporation. Contrary to plaintiffs' contention that the Sigma MTN's were "risky," at the time CashCo purchased them, the Sigma MTNs were rated AAA or the equivalent by all three major rating agencies, they traded in the market at or very close to par, and they were secured by more than $50 billion in highly credit-worthy assets held by Sigma. Indeed, Sigma had issued and repaid in full and on time many billions of dollars of similar MTNs for more than a decade. CashCo was well-diversified; at no relevant time did the Sigma MTNs constitute more than 3% of its holdings. CashCo decisions to purchase and hold Sigma MTNs were fully consistent with its investment guidelines (which were annexed to its securities lending agreements with AFTRA and other putative class members).

In the wake of the credit crisis that began in early 2008, the market price of Sigma MTNs declined substantially. JPMC actively monitored developments regarding Sigma and carefully considered Sigma's financial condition and its ability to repay its outstanding MTNs, and on the basis of its review elected to retain its Sigma MTN holdings rather than sell them at a significant loss. Sigma continued to repay outstanding MTNs in full as they matured through August 2008; as a result, CashCo received full principal and interest on its holdings of Sigma MTNs that matured that month. Following the collapse of Lehman Brothers in September 2008 and the resulting unprecedented seizure in the credit markets, however, Sigma entered receivership on or

about October 6, 2008. As a result, CashCo incurred losses on its holdings of Sigma MTNs that were scheduled to mature in June 2009.

Separate from its securities lending service, JPMC entered into certain transactions with Sigma under which Sigma received funds that enabled it to continue its operations and to repay MTNs as they came due. The trading personnel involved with those transactions were independent of—and on the opposite side of an information wall from—the personnel responsible for the securities lending program and the investment of collateral in CashCo. Consistent with JPMC's internal policies, the decisions to enter into and then to terminate these transactions were made independently of CashCo's decisions whether or not to invest in Sigma MTNs.

At all times JPMC acted prudently in purchasing and holding Sigma MTNs for CashCo, and violated no duties owed to AFTRA or other putative class members. Plaintiffs' claims are based on nothing more than 20/20 hindsight

(3) A schedule including:

    (a) The names of persons to be deposed and a schedule of planned depositions:

        **By plaintiff** (by category as names are not yet known):

            Individuals related to the administration of the securities lending program;
            Individuals related to the marketing of the securities lending program;
            Individuals related to defendant's relationship with AFTRA;
            Individuals related to management of the "CashCo Fund";
            Individuals related to investing the assets of the "CashCo Fund";
            Individuals related to defendant's repurchase agreements ("repo transactions") with Sigma

        **By defendant** (by category as names are not yet known):

            Individuals knowledgeable about AFTRA's and other putative class members' decision to participate in the securities lending program;
            Individuals knowledgeable about AFTRA's and other putative class members' decision to invest their securities lending collateral through CashCo;
            Individuals knowledgeable about AFTRA's and other putative class members' monitoring and oversight of their investments in CashCo, including CashCo's holdings of Sigma MTNs, and their decision to continue investing in CashCo

    All depositions will be completed September 1, 2009—December 31, 2009.

(b)     A schedule for the production of documents:

        Rule 26(a) initial disclosures will be made on or before March 31, 2009.

        Parties will propound written discovery requests on or before April 1, 2009.

        Parties will respond to all document requests on a good faith rolling basis to be completed no later than August 1, 2009. Based on the information currently available to them, the parties believe that completing document production by this deadline is reasonably achievable. In the event that the production of documents is more time-consuming than currently anticipated, the parties may seek appropriate revisions of the schedule herein.

(c)     Dates by which (i) each expert's reports will be supplied to the adverse side and (ii) each expert's deposition will be completed:

        Parties will file any affirmative expert reports, along with all expert disclosures required by Federal Rule of Civil Procedure 26(a)(2), on or before February 15, 2010.

        Parties will file any rebuttal expert reports, along with all expert disclosures required by Federal Rule of Civil Procedure 26(a)(2), on or before April 1, 2010.

(d)     Time when discovery is to be completed:

        Fact discovery will conclude by December 31, 2009.

        Expert discovery will conclude by May 1, 2010.

(e)     The date by which all amendments to the pleadings will be completed:

        All pleadings will be amended by September 30, 2009.

(f)     The dates by which class certification briefing will be completed:

        Plaintiff will file its motion for class certification by September 30, 2009.

        Defendant will file any opposition to class certification by October 30, 2009.

        Plaintiff will file any reply brief in support of class certification by November 13, 2009.

(g)     The date by which plaintiff will supply its pre-trial order matters to defendant:

>   So long as no dispositive motion is pending, plaintiff will supply its pre-trial order matters to defendants by June 1, 2010.

(h) The date by which the parties will submit a pre-trial order in a form conforming with the Court's instructions together with trial briefs and either (1) proposed findings of fact and conclusions of law for a non-jury trial, or (2) proposed voir dire questions and proposed jury instructions, for a jury trial; and

>   So long as no dispositive motion is pending, parties will submit their pre-trial orders by July 1, 2010.

(i) A space for the date for a final pre-trial conference pursuant to Fed. R. Civ. P. 16(d), to be filled in by the Court at the conference.

_____*JAN, 31 2010 at 4:30*_____
(leave blank)

(4) A statement of any limitations to be placed on discovery, including any protective or confidentiality orders;

   Defendant intends to provide plaintiff with a draft confidentiality order that the parties will negotiate in good faith.

(5) A statement of those discovery issues, if any, on which counsel, after a good faith effort; were unable to reach an agreement;

   None at this time.

(6) Anticipated fields of expert testimony, if any;

   **By plaintiff**:

   Financial
   Fiduciary prudence

   **By defendant**:

   Banking practices, including information walls between public- and private-side banking functions
   Fiduciary and investment prudence
   Market for structured investment vehicles ("SIVs") or limited purpose finance companies ("LPFCs"), including Sigma, including the impact of the 2007-08 credit crisis on those entities and the market for their securities

(7) Anticipated length of trial and whether to court or jury;

5

**By plaintiff**:   two weeks; jury

**By defendant**:   two weeks; defendants are currently evaluating whether a jury trial is appropriate

(8)   This Scheduling Order may be altered or amended only on a showing of good cause not foreseeable at the time of the conference of when justice so requires.

(9)   Names, addresses, phone numbers and signatures of counsel;

**For plaintiff**:

BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP
Attorneys for Plaintiff
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706

By: _____
    Joseph H. Meltzer

**For defendant**:

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3215
Fax: (212) 373-2070

By: _____
    Lewis R. Clayton

SO ORDERED:

_____
SHIRA A. SCHEINDLIN
U.S.D.J.

3/23/09