# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOARD OF TRUSTEES OF THE AFTRA RETIREMENT FUND, in its capacity as a fiduciary of the AFTRA Retirement Fund, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Consolidated as No. 09-cv-00686 (SAS) (DF) ECF Case |
| BOARD OF TRUSTEES OF THE IMPERIAL COUNTY EMPLOYEES' RETIREMENT SYSTEM, in its capacity as a fiduciary of the Imperial County Employees' Retirement System, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | |
| THE INVESTMENT COMMITTEE OF THE MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY PENSION PLAN, in its capacity as a fiduciary of the MaBSTOA Pension Plan, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' REVISED MOTION FOR
AN ORDER PRELIMINARILY APPROVING SETTLEMENT, APPROVING FORM
<u>AND MANNER OF NOTICE AND SETTING FINAL APPROVAL HEARING DATE</u>**

Joseph H. Meltzer, Esq.
Peter H. LeVan, Jr., Esq.
Shannon O. Braden, Esq.
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706

*Lead Counsel*

Bradley E. Beckworth, Esq.
Jeff Angelovich, Esq.
Nix Patterson & Roach, LLP
205 Linda Drive
Daingerfield, TX 75638
Tel: (903) 645-7333

Gregory M. Nespole, Esq.
Matthew Moylan Guiney, Esq.
Wolf Haldenstein Adler Freeman Herz LLP
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4761

Milo Silberstein, Esq.
Dealy & Silberstein, LLP
225 Broadway, Suite 1405
New York, New York 10007
Tel: (212) 385-0066

David L. Wales, Esq.
Bernstein, Litowitz, Berger &
 Grossman, LLP
New York, New York 10019
Tel: (212) 373-3215

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................1.

II.     FACTUAL AND PROCEDURAL BACKGROUND.................................................3.

        A.      Description of the Action..........................................................3.

        B.      Summary of the Litigation ........................................................6.

        C.      Settlement Negotiations ...........................................................7.

        D.      The Proposed Settlement ..........................................................7.

        E.      Proposed Timetable ...............................................................9.

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND
        ADEQUATE AND SHOULD BE APPROVED BY THE COURT.........................10.

        A.      The Law Encourages Fair and Reasonable Settlements .................10.

        B.      The Settlement Satisfies this Circuit's Criteria for Class Action
                Settlements ......................................................................11.

                1.      Factor One: The Complexity, Expense, and Likely Duration
                        of the Litigation...............................................12.

                2.      Factor Two: The Reaction of the Class to the Settlement .................14.

                3.      Factor Three: The Stage of the Proceedings and Discovery
                        Completed ....................................................14.

                4.      Factor Four: The Risks of Establishing Liability.............................16.

                5.      Factor Five: The Risks of Establishing Damages ............................17.

                6.      Factor Six: The Risks of Maintaining the Class Action
                        Through Trial .................................................19.

                7.      Factor Seven: The Ability of Defendant to Withstand a
                        Greater Judgment ............................................19.

                8.      Factors Eight and Nine: The Reasonableness of the
                        Settlement in Light of the Best Possible Recovery and the
                        Attendant Risks of Litigation...............................19.

IV.     THE COURT HAS ALREADY CERTIFIED THE CLASS ....................................22.

V.    THE PROPOSED NOTICE SHOULD BE APPROVED ........................................22.

    A.    The Proposed Notice Meets the Requirements of Due Process....................22.

    B.    Description of the Notice ...............................................................................24.

VI.    CONCLUSION...........................................................................................................25.

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Board of Trustees of the AFTRA Retirement Fund, et al. v. JPMorgan Chase Bank, N.A.*,
   Case No. 09-CV-00686 (SAS) (DF).............................................................................1, 22

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   07 Civ. 2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ......................................23

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975)...................................................................................................17

*Bonime v. Doyle*,
   416 F. Supp. 1372 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 554 (2d Cir. 1977)...............18

*Chatelain v. Prudential-Bache Secs., Inc.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) ...........................................................................11

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)...................................................................10, 12, 16, 20

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)......................................................................................22

*Donovan v. Bierwirth*,
   754 F.2d 1049 (2d Cir. 1985)....................................................................................17

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)........................................................................................10

*Handschu v. Special Servs. Div.*,
   787 F.2d 828 (2d Cir. 1986)......................................................................................23

*In re BankAmerica Corp. Sec. Litig.*,
   210 F.R.D. 694 (E.D. Mo. 2002) ..............................................................................21

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,
   228 F.R.D. 541 (S.D. Tex. 2005)........................................................................13, 21

*In re Global Crossing*,
   225 F.R.D..........................................................................................................13, 16, 21

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   191 F.R.D. 457 (E.D. Pa. 2000)................................................................................17

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    209 F.R.D. 94 (E.D. Pa. 2002)...................................................................................13

*In re Initial Public Offering Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) (Scheindlin, J.)......................................................24

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ....................................................................................21

*In re Metlife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................................23

*In re Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ..........................................................................18, 19

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................11, 20

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ..............................................................................12

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    164 F.R.D. 362 (S.D.N.Y. 1996) ..............................................................................23

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989)..........................................................................20

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ......................................................................23

*In re WorldCom, Inc. ERISA Litig.*,
    No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671 (S.D.N.Y. Oct. 18, 2004) ............12

*In re WorldCom Sec. Litig.*,
    No. 02-CV-3288 (DLC), 2007 U.S. Dist. LEXIS 48155 (S.D.N.Y. July 6, 2007) ................23

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    128 S. Ct. 1020 (2008)...............................................................................................17

*Milstein v. Huck*,
    600 F. Supp. 254 (E.D.N.Y. 1984) ...........................................................................12

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972).......................................................................................10

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) .....................................................................................21

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ............................................................... 14

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................................... 14

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  No. 01-CV-11814, 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ......................... 16

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................ 10, 11, 23

*Weigner v. City of New York*,
  852 F.2d 646 (2d Cir. 1988) .................................................... 23, 24

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ..................................................... 10, 11, 23

*Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.*,
  439 F.3d 165 (2d Cir. 2006) ........................................................ 23

## STATE CASES

*Nat'l Union Fire Ins. Co. Pittsburgh, Pa. v. Proskauer Rose Goetz & Mendelsohn*,
  165 Misc. 2d 539, 634 N.Y.S.2d 609 (Sup. Ct. 1994), *aff'd sub nom. Nat'l Union Fire
  Ins. Co. of Pittsburgh, Pa. v. Proskauer, Rose Goetz & Mendelsohn*, 227 A.D.2d 106,
  642 N.Y.S.2d 505 (1996) ........................................................... 18

## FEDERAL STATUTES

§ 404(a), 29 U.S.C. § 1104(a) .......................................................... 4

## RULES

FED. R. CIV. P. 23(e)(2) ............................................................. 11

FED. R. CIV. P. 23(e)(4) ............................................................. 22

FED. R. CIV. P. 23(a) and 23(b)(3): ................................................. 22

FED. R. CIV. P. 23(e) ............................................................... 10

FED. R. CIV. P. 23(e)(1)(B) .......................................................... 25

FED. R. CIV. P. 23(b)(3) .............................................................. 3

**OTHER AUTHORITIES**

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS, § 8.34 (4th ed.
  2002) ..................................................................................................................................25

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11:45 (4th ed.
  2002) ..................................................................................................................................14

I.    **INTRODUCTION**

Plaintiffs the Board of Trustees of the AFTRA Retirement Fund ("AFTRA"), the Board of Trustees of the Imperial County Employees' Retirement System ("ICERS") and the Investment Committee of the Manhattan and Bronx Surface Transit Operating Authority Pension Plan ("MaBSTOA"), in their respective capacities as fiduciaries of the AFTRA Retirement Fund, the Imperial County Employees' Retirement System and the MaBSTOA Pension Plan (collectively, the "Named Plaintiffs" or "Plaintiffs"), respectfully submit this Memorandum of Law in Support of their Revised Motion for Preliminary Approval of the Proposed Settlement, Approving Form and Manner of Notice and Setting Final Approval Hearing Date[1] ("Motion for Preliminary Approval").

Plaintiffs seek an Order: (a) granting preliminary approval of the Settlement of this Action;[2] (b) approving the form and dissemination of notice of the Settlement; and (c) setting the date and time for the Final Approval Hearing for the proposed Settlement and related deadlines as set forth in the attached proposed Order.[3]  Plaintiffs seek this Order on behalf of the Class, which consists of all plans and entities (collectively "the Plans") for which Defendant JPMorgan Chase Bank, N.A. ("JPMC Bank" or "Defendant"), pursuant to a securities lending agreement,

---

[1]  The Stipulation of Settlement ("Settlement" or "Stipulation"), attached to the Supporting Declaration of Peter H. LeVan, Jr. filed contemporaneously herewith ("LeVan Decl.") as Exhibit A, contains several exhibits, including the proposed form of Notice of Settlement and the proposed form of the Preliminary Approval Order.  The provisions of the Stipulation, including all definitions and defined terms, are incorporated by reference herein.  All capitalized terms not otherwise defined in this Memorandum shall have the same meaning as ascribed to them in the Stipulation.

[2]  The Action is the *Board of Trustees of the AFTRA Retirement Fund, et al.* v. *JPMorgan Chase Bank, N.A.*, Case No. 09-CV-00686 (SAS) (DF), along with all consolidated actions, pending in the United States District Court for the Southern District of New York.

[3]  The [Proposed] Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order") is attached to the Stipulation as Exhibit C.

invested cash collateral, either directly or through a collective investment vehicle, in one or more debt securities of Sigma Finance, Inc. ("Sigma") and continued to hold those debt securities as of the close of business on September 30, 2008, as certified by the Court in the Certification Opinion and Order and as more specifically set out in the Stipulation.

The Parties[4] have reached a proposed Settlement of this case providing for a monetary payment of $150,000,000 (the "Settlement Amount"), which will provide substantial benefits to members of the Class and resolve all claims asserted by Plaintiffs in this Action. Lead Counsel[5] participated in numerous discussions and arm's-length negotiations with JPMC Bank's Counsel, as well as formal mediation sessions, with respect to a compromise and settlement of this Action. Based on a thorough review of the more than 836,000 pages of documents produced by the Parties and third-parties to this litigation, extensive discovery practice, evaluation of governing law and the recognition of the substantial risks of continued litigation, Plaintiffs and Plaintiffs' Counsel submit that the proposed Settlement is fair, reasonable and adequate, and is in the best interests of the Class as it provides for a meaningful and certain recovery. Resolution of the case at this juncture allows the Parties to avoid the risks and costs associated with trial, as well as potential years of continued litigation on appeal. Moreover, continued litigation of this Action could result in a judgment or verdict less than the recovery under the Settlement or no recovery.

There is little doubt that breach of fiduciary duty class action lawsuits brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and New York common law face significant litigation and trial risks. Lead Counsel realistically evaluated the risks of

---

[4] The term "Parties" as used herein refers collectively to Plaintiffs and Defendant JPMC Bank.

[5] On June 1, 2009, the Court appointed Kessler Topaz Meltzer & Check, LLP (formerly known as Barroway Topaz Kessler Meltzer & Check, LLP) as Lead Counsel to act on behalf of the proposed Class. Lead Counsel together with all other counsel – Nix Patterson & Roach, LLP; Dealy & Silbertstein, LLP; Wolf Haldenstein Adler Freemen Herz, LLP; and Bernstein, Litowitz, Berger & Grossman, LLP – are collectively referred to as "Plaintiffs' Counsel."

proceeding to trial and the Parties agreed to the proposed Settlement only after vigorous arm's-length negotiations by experienced counsel on both sides under the auspices of the Honorable Layn R. Phillips.

As discussed *infra*, by Opinion and Order dated August 4, 2010 (the "Certification Opinion and Order"), this Court certified a Class in this matter pursuant to Rule 23(b)(3). Accordingly, there is no need for the Court to certify or re-certify a class for purposes of this Settlement. Moreover, as ordered by the Court, the Settlement provides Class Members with a second opportunity to exclude themselves from the Class and the Settlement if they submit a written Request for Exclusion on or before May 14, 2012 (or twenty-one (21) days prior to the Final Approval Hearing).

Finally, the proposed Notice satisfies all due process requirements. The proposed individualized direct-mail and proposed Internet dedicated settlement website described herein are consistent with the forms of notice approved in analogous actions. Such notice will inform members of the Class of the terms of the Settlement, how to exclude themselves from the Class and the Settlement, how to object to the Settlement, and the date and time of the Final Approval Hearing.

As set forth below in detail, all prerequisites for preliminary approval of the Settlement have been met. The Court should therefore preliminarily approve the proposed Settlement and Plaintiffs should be permitted to begin notifying the Class of the Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Description of the Action

On January 23, 2009, AFTRA – a participant in Defendant JPMC Bank's securities lending program – filed an initial class action complaint on behalf of itself and others similarly situated for breach of fiduciary duties under ERISA for losses incurred by the then-putative class

arising from Defendant's decision to invest in and maintain investment of the Class' funds in medium-term notes ("Notes" or "Sigma Notes") issued by Sigma. *See* AFTRA Complaint, No. 09-CV-686 (Dkt. No. 1). On April 23, 2009, AFTRA filed an Amended Class Action Complaint. *See* AFTRA Amended Complaint, No. 09-CV-686 (Dkt. No. 21).

On March 27 and May 7, 2009, respectively, Plaintiffs ICERS and MaBSTOA filed substantially identical cases against Defendant JPMC Bank under New York common law. *See* ICERS Complaint, No. 09-CV-3020 (Dkt. No. 1); MaBSTOA Complaint, No. 09-CV-4408 (Dkt. No. 1). The Court subsequently ordered those cases to be consolidated with the AFTRA matter. *See* Court's April 24, 2009 Order, No. 09-CV-3020 (Dkt. No. 9); June 1, 2009 Order, No. 09-CV-4408 (Dkt. No. 9). The Court also appointed Kessler Topaz Meltzer & Check, LLP ("KTMC") (formerly known as Barroway Topaz Kessler Meltzer & Check, LLP) as Interim Lead Counsel and, as part of the Certification Opinion and Order, subsequently appointed KTMC as Lead Counsel for the Class. *See* Court's June 1, 2009 Order, No. 09-CV-686 (Dkt. No. 25); Opinion and Order Granting Class Certification, No. 09-CV-686 (Dkt. No. 62).

The Complaints collectively allege, *inter alia*, that Defendant JPMC Bank violated its statutory duties of prudence, care, and loyalty under ERISA Section 404(a), 29 U.S.C. § 1104(a), and under New York common law, by imprudently investing and maintaining Plaintiffs' securities lending cash collateral in Notes issued by Sigma. Plaintiffs assert several causes of action for the losses suffered by Plaintiffs and the Class as a result of the alleged breaches of fiduciary duty by Defendant. Specifically, Count I of the AFTRA Amended Complaint alleges that Defendant breached its fiduciary duty to prudently and loyally manage Plan assets under ERISA by, *inter alia*: (1) imprudently investing the cash collateral received by the AFTRA Plan and other Class Members in Sigma Notes, which were inappropriate and unsuitable investments

for the investment of the cash collateral; (2) imprudently failing to properly monitor the investments in the Sigma Notes which, if prudently done, would have revealed the excessive risks of Sigma's inability to pay the Notes as they matured; and (3) imprudently maintaining the investments in the Sigma Notes after becoming aware of analysts warnings concerning Sigma, its dire financial condition, and its likely failure before the Notes matured. *See* AFTRA Amended Complaint ¶ 98.

Count II of the AFTRA Amended Complaint alleges that Defendant breached its duty to avoid conflicts of interest under ERISA by, *inter alia*: (1) earning fees and interest through JPMC Bank's provision of repurchase ("repo") financing to Sigma, while maintaining the investment of the ERISA Plans' assets in Sigma Notes; (2) failing to timely engage independent fiduciaries who could make independent judgments concerning the investment of the ERISA Plans' assets in Sigma Notes; and (3) by otherwise placing its own interests above the interests of the ERISA Plans in disregard of the risk of principal losses to the AFTRA Plans and other Class Members. *See* AFTRA Amended Complaint ¶ 103.

Based upon the same alleged conduct, Plaintiffs ICERS and MaBSTOA assert substantially similar claims for breach of the fiduciary duty to prudently and loyally manage plan assets under New York common law in their class action Complaints. *See* ICERS Complaint ¶¶ 95-96; MaBSTOA Complaint ¶¶ 98-99. In addition, Plaintiffs ICERS and MaBSTOA assert claims for negligence and breach of contract. *See* ICERS Complaint ¶¶ 104, 111, 114; MaBSTOA Complaint ¶¶ 106, 114, 117.

Defendant JPMC Bank filed substantially similar Answers to all three operative Complaints, denying all of Plaintiffs' material allegations and asserting several affirmative defenses. *See* Answer to AFTRA Complaint, No. 09-CV-686 (Dkt. No. 12); Answer to AFTRA

Amended Complaint, No. 09-CV-686 (Dkt. No. 22); Answer to ICERS Complaint, No. 09-CV-686 (Dkt. No. 23); Answer to MaBSTOA Complaint, No. 09-CV-686 (Dkt. No 29).

### B.    Summary of the Litigation

The Parties began their discovery efforts in earnest early in the litigation. Over the course of discovery, the Parties exchanged numerous discovery requests; produced and reviewed more than 795,000 pages of documents between themselves; served numerous third-party subpoenas and reviewed more than 41,000 pages of documents produced in response thereto. The Parties also took the depositions of 28 fact witnesses; retained experts and exchanged 21 expert reports; and took 12 expert depositions. *See* LeVan Decl. ¶ 45. The Parties have been litigating this Action vigorously for more than three years.

The Parties also engaged in extensive motion practice throughout the course of the Action. Among other matters, the Parties prepared and filed cross-motions for partial summary judgment, *Daubert* motions, and numerous motions *in limine*. *See id.* ¶¶ 47-48; 51.

The Parties diligently prepared for trial, scheduled to commence on February 6, 2012. *See id* ¶ 50. In connection therewith, the Parties exchanged drafts and objections to various pretrial materials, including witness lists, exhibit lists, deposition designations, proposed jury instructions, *voir dire* questions and verdict forms. *See id* ¶ 53. On January 6, 2012, the Parties filed with the Court a Joint Final Trial Report, Trial Memoranda of Law and Trial Exhibits and, the following week, submitted Proposed Findings of Fact and Conclusions of Law. *See id* ¶ 55. Plaintiffs thus were and continue to be committed to this Action and have pursued it vigorously in the face of strong and dedicated opposition, right up to the very eve of trial.

### C.     Settlement Negotiations

The settlement negotiations in this Action were hard-fought, lengthy and certainly arm's-length.  Informal negotiations started as early as December 2009, when the Parties exchanged Confidential Statements, setting forth their respective positions concerning the possible settlement of the Action.  Then, on December 17, 2010, the Parties participated in a formal mediation session before former United States District Judge Layn R. Phillips.  Although the mediation session was unsuccessful, the Parties and Judge Phillips remained in contact and participated in numerous telephonic sessions thereafter.

The Parties continued to litigate this Action vigorously and to prepare the case for trial. On January 25, 2012, following multiple communications with Judge Phillips, the Parties reached an agreement in principle to settle all claims in the Action.  On March 16, 2012, the Parties fully executed the Stipulation of Settlement, attached hereto as Exhibit A.  Notably, the extensive course of the negotiations and the substance of this Settlement overwhelmingly support the fairness of the Settlement.  The arm's-length nature of the negotiations and the participation of an experienced mediator throughout the process strongly support the conclusion that the proposed Settlement is fair, reasonable and adequate.

### D.     The Proposed Settlement

The Settlement provides that Defendant JPMC Bank will pay $150,000,000 to the Class to be allocated pursuant to a Court-approved Plan of Allocation, as set forth in the Notice.  In exchange, the Plaintiffs and the Class will dismiss their Complaints and all related claims, as set forth more fully in the Settlement, and JPMC Bank will execute a similar release in favor of the Class Members.  The Settlement also provides for the dismissal and release of Third-Party Claims that Defendant JPMC Bank filed against the trustees of certain members of the Class,

provided that JPMC Bank receives corresponding releases from the Third-Party Defendants. The Settlement sets forth the proposed Notice to the members of the Class, and provides for the ability of Lead Counsel to seek payment of attorneys' fees, reimbursement of expenses and Case Contribution Awards for the Named Plaintiffs, subject to the Court's approval.

The Plaintiffs have entered into this Settlement with a full and comprehensive understanding of the strengths and weaknesses of their claims, based on extensive legal research and discovery conducted by Lead Counsel, as well as Lead Counsel's unique experience with these types of complex class actions. Lead Counsel, in assessing the merits of the proposed Settlement, considered the risks and uncertainties of ultimately prevailing at trial in light of various factors, some of which were made clearer as the case neared trial. In particular, Defendant has and would certainly continue to argue at trial that it acted prudently, and that certain Separate Account Holders[6] were partially or entirely responsible for the decision to buy or hold the Sigma Notes. Defendant also would have strenuously argued that any damages awarded to the Class should be in an amount less than the $150,000,000 that Lead Counsel obtained in the Settlement.

Thus, as with any litigated case, Plaintiffs would face an uncertain outcome if the Action were to continue to trial against JPMC Bank. Accordingly, based on extensive legal research and discovery, thorough analysis of the risks inherent in continuing to trial, the risks of establishing liability and damages, and the risk of likely appeals regardless of which side prevailed at trial, Plaintiffs' Counsel unequivocally support the Settlement and the definite and timely benefit it provides to the Class.

---

[6] The term "Separate Account Holders" as used herein refers collectively to Class Members GMAM, CME, IBM, World Bank and NYSCRF.

**E.    Proposed Timetable**

The proposed Preliminary Approval Order respectfully suggests that the Final Approval Hearing be set for June 4, 2012, at 5:00 p.m.  In the event the Court is unable to hold the Final Approval Hearing at that date and time, the Parties respectfully request that the Final Approval Hearing be scheduled no less than 60 calendar days, and no more than 90 calendar days, after entry of the proposed Preliminary Approval Order.

The Parties have consented to the following generalized schedule, assuming that the Court preliminarily approves the Settlement:

| Event | Time for Compliance |
|---|---|
| Deadline for Mailing Notice and Publishing Notice on the Dedicated Settlement Website | No later than 10 calendar days after entry of Preliminary Approval Order |
| Deadline for JPMC Bank to Deposit $150,000,000 in the Escrow Account | No later than 10 business days after the later of entry of the Preliminary Approval Order, and the provision of all necessary information for JPMC Bank to effectuate a transfer of funds |
| Deadline for Plaintiffs to File their Motion for Final Approval of the Settlement; Motion for Attorneys' Fees, Reimbursement of Expenses and for Case Contribution Awards to Named Plaintiffs; and Motion for Final Approval of the Plan of Allocation | No later than May 7, 2012 or 28 calendar days prior to Final Approval Hearing |
| Deadline for Requests for Exclusion to be Submitted | No later than May 14, 2012 or 21 calendar days prior to Final Approval Hearing |
| Deadline for Objections to the Settlement to be Filed | No later than May 14, 2012 or 21 calendar days prior to Final Approval Hearing |
| Deadline for Appearance of Counsel regarding Objections | No later than May 14, 2012 or 21 calendar days prior to Final Approval Hearing |
| Deadline for Filing Intentions to Appear at Final Approval Hearing regarding Objections | No later than May 14, 2012 or 21 calendar days prior to Final Approval Hearing |
| Deadline for Submitting Acknowledgement Forms | No later than May 14, 2012 or 21 calendar days prior to Final Approval Hearing; or as otherwise provided in the Stipulation |

| Deadline for Plaintiffs or JPMC Bank to File Any Reply or Response to Any Objection Filed by a Class Member | No later than May 28, 2012 or 7 calendar days prior to Final Approval Hearing |
|---|---|
| Final Approval Hearing | June 4, 2012 at 5:00 p.m. EST |

## III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.    The Law Encourages Fair and Reasonable Settlements

Plaintiffs present this Settlement for review under Federal Rule of Civil Procedure 23(e), which requires court approval of class action settlements, the issuance of notice in a reasonable manner to Class Members that would be bound by the settlement, and a finding by the Court following a hearing that the settlement is fair, reasonable and adequate.   For the reasons discussed below, preliminary approval under Rule 23(e) in this matter is appropriate.

Settlements of disputed claims, especially in complex class action litigation, are strongly favored by the courts.   *See, e.g.*, *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.") (citation omitted).   The decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, which should exercise that discretion in light of the general judicial policy favoring settlement. *See, e.g.*, *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) (abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *see also Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972) ("[W]e

recognized that since the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial.") (citation omitted). Rather, "a strong initial presumption of fairness attaches to the proposed settlement" if the settlement is reached by experienced counsel after arm's-length negotiations. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).

Courts have also examined the "negotiating process by which the settlement was reached." *Weinberger,* 698 F.2d at 74. They have focused on whether the settlement was achieved through "arm's length negotiations" by counsel who have "the experience and ability . . . necessary for effective representation of the class' interest." *Id.* Courts, therefore, should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Chatelain v. Prudential-Bache Secs., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (citation omitted). This initial presumption of fairness and adequacy applies with special force here because the Settlement was reached by experienced, informed counsel after protracted arm's-length negotiations at the eve of trial.

### B.    The Settlement Satisfies this Circuit's Criteria for Class Action Settlements

The standard for reviewing a proposed settlement of a class action is whether the proposed settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 116 (citation omitted). To aid in this analysis, the Second Circuit has set forth nine factors a court should consider in deciding whether a proposed class action settlement is substantively fair, reasonable and adequate. The following nine factors derive from New York common law and have been applied in both ERISA and common law cases:

> (1)    the complexity, expense and likely duration of the litigation;
>
> (2)    the reaction of the class to the settlement;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the risks of establishing liability;

(5)     the risks of establishing damages;

(6)     the risks of maintaining the class action through the trial;

(7)     the ability of the defendants to withstand a greater judgment;

(8)     the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)     the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).

Although complete analysis of these factors is required prior to final approval of a settlement, at the preliminary approval stage, "the Court need only find that the proposed settlement fits 'within the range of possible approval.'" *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (citation omitted). That test is easily satisfied here.

### 1.    Factor One: The Complexity, Expense, and Likely Duration of the Litigation

"The expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). Many courts have noted the complexity of ERISA breach of fiduciary duty claims such as those asserted in this Action. Indeed, in *In re WorldCom, Inc. ERISA Litigation*, an ERISA company stock case, Judge Cote expressly recognized the "general risk inherent in litigating complex claims such as these to their conclusion." *In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671, at *25 (S.D.N.Y. Oct. 18, 2004) (approving settlement). Similarly, in *In re Global Crossing Securities & ERISA Litig.*, Judge Lynch explained that ERISA "[f]iduciary status, the scope of fiduciary responsibility . . . and numerous legal issues concerning fiduciary liability . . . substantially increase the ERISA cases'

complexity, duration, and expense – and thus militate in favor of settlement approval." 225 F.R.D. 436, 456 (S.D.N.Y. 2004); *see also In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 565 (S.D. Tex. 2005) (finding that "complexity, expense and likely duration of the litigation . . . are self evident and exceptional"); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94, 104-07 (E.D. Pa. 2002) (finding that the complexity and duration of litigating ERISA breach of fiduciary duty claims, as well as the expense of litigation and risks of establishing liability and damages, weighed heavily in favor of settlement).

This case is no exception.  Plaintiffs' claims raise numerous complex legal and factual issues under both ERISA and New York common law which would require comprehensive evidentiary support and testimony.  As an initial matter, the fact that this Action involves both ERISA and New York common law claims renders it particularly complex to litigate at trial, with certain Class members' claims to be decided by the Court while other Class members' claims would be decided by the jury.  The complexity and expense of the case has also been borne out by the time and effort the Parties and their counsel have put into litigating this matter over the past three years.  As set forth in greater detail above, the Parties to this Action exchanged numerous discovery requests; produced and reviewed more than 795,000 pages of documents; took the depositions of 28 fact witnesses; and engaged in extensive expert discovery.  Indeed, the Parties litigated this Action to the very eve of trial and agreed to the Settlement only after extensive arm's-length negotiations before an experienced mediator.  This Settlement eliminates the additional time and expense of litigating this Action at trial and therefore conserves judicial resources.

Moreover, even if the Class could recover a judgment at trial, the additional delay through trial, post-trial motions and the appellate process could deny the Class any actual

recovery for years, further reducing its value. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or Class Member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery."). Furthermore, a winning jury verdict does not provide absolute assurance of recovery, where post-trial motions and appeals are likely. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing on appeal $81 million jury verdict, dismissing case with prejudice in securities action).

Together, these factors weigh heavily in favor of preliminary approval of the Settlement.

### 2.    Factor Two: The Reaction of the Class to the Settlement

At this stage of the litigation, prior to preliminary approval and issuance of Plaintiffs' proposed Notice, no members of the Class have raised objections regarding the Settlement. Lead Plaintiffs have been actively involved in and apprised of all settlement negotiations, and they expressly approve of the Settlement. In addition, the Separate Account Holders have been apprised of all settlement negotiations, and none have raised objections to the Settlement to date.

### 3.    Factor Three: The Stage of the Proceedings and Discovery Completed

For a class action settlement to be found reasonable and appropriate based on the status of discovery, the court does not need to decide the merits of the litigation, but it does need something above "mere conjecture." 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11:45 (4th ed. 2002). Although there is no litmus test for determining how much work on the case is sufficient to make this determination, whatever the measure, it is easily satisfied here.

14

Plaintiffs have developed a comprehensive understanding of the key legal issues in this Action based on the late stage of litigation and are therefore in a good position to evaluate the fairness of the Settlement. Again, as set forth in greater detail in the supporting Declaration of Peter H. LeVan, Jr. filed contemporaneously herewith, the Parties have been litigating this Action vigorously for more than three years. Throughout that lengthy period, Plaintiffs conducted an extensive legal and factual investigation and evaluation of their claims and have engaged in extensive fact and expert discovery practices with Defendant. The Parties exchanged numerous discovery requests; produced and reviewed more than 795,000 pages of documents between themselves; served numerous third-party subpoenas and reviewed more than 41,000 pages of documents produced in response thereto; issued Letters of Request to several foreign entities; took the depositions of 28 fact witnesses; retained experts and exchanged 21 expert reports; and took 12 expert depositions.

Plaintiffs also sought certification of the Class, which was granted by the Court on August 4, 2010, and fully briefed dispositive summary judgment motions, *Daubert* motions, and motions *in limine*. The Parties prepared numerous pretrial materials in advance of trial, exchanging myriad drafts of pretrial materials (*e.g.*, witness lists, exhibit lists, deposition designations, jury instructions, *voir dire* questions and verdict forms) and filing with the Court a Joint Final Trial Report, Trial Memoranda of Law and Trial Exhibits on January 6, 2012. The Parties subsequently prepared and filed Proposed Findings of Fact and Conclusions of Law that following week.

In short, the Parties have thoroughly litigated this Action until the eve of trial and Plaintiffs have a strong basis to assess the strengths and weaknesses of their claims for purposes of engaging in meaningful settlement negotiations. The advanced stage of the litigation and

extensive amount of legal research, as well as fact and expert discovery completed by the Parties, weighs heavily in favor of approval of the Settlement.

Lead Counsel are confident they have "a clear view of the strengths and weaknesses of their case[]," *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814, 2004 U.S. Dist. LEXIS 8608, at *10 (S.D.N.Y. May 14, 2004) (quotation omitted), and are well aware of the range of possible outcomes at trial. In assessing the merits of the proposed Settlement, Lead Counsel considered the risks and uncertainties of proceeding with the litigation and ultimately prevailing at trial in light of various factors, some of which were made clearer as the Action approached trial.

Based upon extensive legal research, all fact and expert discovery, analysis of the risks inherent in continued litigation, the risks of establishing liability and damages at trial, and the likelihood of appeals regardless of which side prevailed at trial, Lead Counsel unequivocally support the Settlement and the immediate and definite benefit it provides to Class Members.

### 4.    Factor Four: The Risks of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463. Certain types of ERISA claims similar to those asserted by Plaintiffs here have been described as implicating "a rapidly developing, and somewhat esoteric, area of law." *In re Global Crossing,* 225 F.R.D. at 459 n.13 (finding that plaintiffs' significant legal and factual obstacles to proving their case, when viewed against the substantial and certain benefits of settlement, supported settlement approval). Plaintiffs believe strongly in their claims and are optimistic regarding chances for success at trial. In Plaintiffs' view, by investing half a billion dollars of third-party cash collateral in Sigma Notes without adequate due diligence, and then failing to sell, trade or otherwise liquidate the Sigma Notes notwithstanding evidence

indicating that Sigma's failure was imminent, JPMC Bank breached its fiduciary obligations to the Class. Plaintiffs nonetheless recognize that Defendant disputes their view, that liability is far from automatic and that there are substantial obstacles to obtaining a liability verdict in the case. Defendant JPMC Bank has presented a number of defenses to Plaintiffs' claims, each of which Plaintiffs would have to overcome at trial in this Action.

Although Lead Counsel is confident in its ability to ultimately prove the claims asserted, the risks of a verdict in favor of Defendant or the value of the Action being diminished at trial, when weighed against the immediate benefits of the Settlement, confirm that the Settlement is in the best interest of the Class and therefore should be approved.

### 5.    Factor Five: The Risks of Establishing Damages

The relevant law on ERISA damages is the Second Circuit's influential opinion in *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985).[7]  Plaintiffs maintain that the risk in proving damages resides primarily in the complexity of the calculation. Damages calculations in ERISA cases like this are expert-intensive. In calculating damages, Plaintiffs' expert first determined what would have occurred and the economic impact but-for the alleged improper purchase and hold by Defendant of Sigma Notes on behalf of the Class; he then compared it to what happened and the economic impact under the alleged improper conduct. In this Action, the but-for calculation is the scenario where JPMC Bank would have invested Class members' cash

---

[7] The Second Circuit stated "[w]here several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these." *Id.*. *See also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020, 1024 n.4 (2008) ("[Section] 502(a)(2) encompasses appropriate claims for 'lost profits.'"). Any ambiguity or uncertainty in damages is resolved against the fiduciaries. *Donovan*, 754 F.2d at 1056. In addition, unlike the securities laws, which only protect persons who *purchased* stock during the class period, *see, e.g.*, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739 n.9 (1975), ERISA provides relief for the imprudent purchase *and holding* of stock by a Plan during the class period. *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 463-4 (E.D. Pa. 2000) (finding that "[p]laintiffs correctly stress the difference between a securities fraud claim and an ERISA claim" and discussing in particular the availability of "holder claims" under ERISA).

collateral in a different investment than the Sigma Notes.  Damages are calculated by comparing the performance of the alternative investment chosen to the actual investment in Sigma Notes.

Plaintiffs believe that New York state law provides for similar damages.  A breaching fiduciary must "make whole the party to which he or she owes a fiduciary duty for any damages arising from the breach of the fiduciary's duty, and the appropriate measure of damages requires placing the beneficiary in the same position it would have been in had the wrong not occurred." *Nat'l Union Fire Ins. Co. Pittsburgh, Pa. v. Proskauer Rose Goetz & Mendelsohn,* 165 Misc. 2d 539, 546, 634 N.Y.S.2d 609, 615 (Sup. Ct. 1994), *aff'd sub nom. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Proskauer, Rose Goetz & Mendelsohn,* 227 A.D.2d 106, 642 N.Y.S.2d 505 (1996) (citing *Town of Evans v. Catalino,* 88 A.D.2d 780, 451 N.Y.S.2d 523 [4th Dept.], *appeal dismissed,* 58 N.Y.2d 687, 458 N.Y.S.2d 543, 444 N.E.2d 1007 [1982]).  The measure of damages under New York law thus requires a similarly careful calculation by Plaintiffs' expert of the possible dates on which the fact finder might conclude the alleged breach occurred, and what position the Plaintiffs would have been in at that time had Defendant's wrongful conduct not taken place.

While Plaintiffs are confident in their ability to establish substantial damages, they are also aware that the presentation of such complex testimony involves risks that settlement avoids. *In re Milken & Assocs. Sec. Litig.,* 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement of a small percentage of the total damages sought because the magnitude of damages often becomes a "battle of experts . . . with no guarantee of the outcome"); *Bonime v. Doyle,* 416 F. Supp. 1372 (S.D.N.Y. 1976), *aff'd,* 556 F.2d 554 (2d Cir. 1977), *and aff'd,* 556 F.2d 555 (2d Cir. 1977) (difficulty in determining damages is a factor supporting settlement).  In addition, Defendant has raised challenges to Plaintiffs' view concerning the applicable standard of damages under ERISA

and New York law, creating even further uncertainty concerning how the issue might be resolved at trial. This factor, like the others, therefore militates in favor of the sum-certain Settlement proposed here.

### 6. Factor Six: The Risks of Maintaining the Class Action through Trial

As set forth further in Section V *infra*, which discusses class certification in detail, the Court granted class certification on August 4, 2010 and the Action has proceeded as a class action since that decision. From a practical standpoint, certification provides procedural advantages that have enabled the efficient litigation of the claims asserted by Plaintiffs in this Action and Plaintiffs did not anticipate that the Class would be decertified at any point prior to trial, particularly at this late stage in the litigation. However, class certification can be reviewed and modified by the Court at any time before trial, or on appeal, so there is always a risk that this Action, or particular claims in this Action, may not be maintained for the Class through trial. Thus, the risk of failing to maintain the Class through trial – albeit small – also weighs in favor of the Court approving the proposed Settlement.

### 7. Factor Seven: The Ability of Defendant to Withstand a Greater Judgment

Plaintiffs do not believe that this factor is an issue due to the financial stability of Defendant and its resultant ability to satisfy a judgment in this case.

### 8. Factors Eight and Nine: The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

In evaluating the proposed settlement, a court is not required to engage in a trial on the merits to determine the prospects of success. *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. at 54. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and

weaknesses of plaintiffs' case." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (citing *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984)).  The Court thus need only determine whether the Settlement falls within a "range of reasonableness." *PaineWebber*, 171 F.R.D. at 130 (citations omitted). Additionally, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455.  Indeed, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n.2; *see also PaineWebber*, 171 F.R.D. at 130 (fairness determination turns not on a "mathematical equation yielding a particularized sum" but rather on "the strengths and weaknesses of the plaintiffs' case" (internal quotation marks omitted)).

        In this Action, there is a broad range of potential recovery if the case were litigated to conclusion rather than settled.  It is possible that Defendant could prevail on one or more of their legal or factual arguments to defeat liability entirely.   While Plaintiffs are confident of the strength of their claims, they recognize that this possibility cannot be discounted completely. And even assuming Plaintiffs establish liability, several variables would be at work in fixing the actual amount of recoverable damages.  Damages could vary widely depending on when the finders of fact concluded that Defendant JPMC Bank breached its fiduciary obligations to the Class and the available pricing information for Sigma Notes on or around that date.  The weight given to the Parties' arguments concerning the role of Separate Account Holders as well as their arguments concerning the secondary market would also impact damages.

Considering the present and time-value of money, the probability of a lengthy and involved trial in the absence of a settlement, the risk that the Class would not succeed in proving liability against Defendant and the range of possible recovery at trial, the Settlement is well within the range of reasonableness.  As Judge Harmon aptly put it when approving one of the settlements in *In re Enron ERISA Litigation.*: "The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand."  228 F.R.D. at 566; *see also In re Global Crossing*, 225 F.R.D. at 461 ("The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road.") (citation omitted).

The Settlement Amount of $150 million – which is large and substantial in its own right – represents between approximately 30% and 100% of the potentially provable losses that Plaintiffs believe they could show if liability were established for a particular breach date. Therefore, the Settlement Amount represents a range of recovery that is appropriate given the wide range of potential damage outcomes at trial – as well as the possibility of a verdict in favor of Defendant that would result in zero recovery for the Class.  *See, e.g.*, *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 701-02 (E.D. Mo. 2002) (approving settlement comprising one-tenth of plaintiffs' potential recovery and collecting cases approving settlements comprising 2-8% of desired or potential recovery); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement with all defendants that comprised one-sixth of plaintiffs' potential recovery); *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.") (citations and internal quotations omitted)).

Accordingly, the Settlement is reasonable in light of the best possible recovery for the Class and the attendant risks of litigation and should be approved by the Court.

## IV.    THE COURT HAS ALREADY CERTIFIED THE CLASS

On August 4, 2010, the Court entered an Opinion and Order granting class certification. *See Bd. of Trs. of the AFTRA Ret. Fund et al v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y., 2010) ("For the foregoing reasons, plaintiffs' motion for class certification is granted. AFTRA, ICERS, and MaBSTOA are appointed class representatives and Barroway Topaz is appointed class counsel."). The Court certified the following class under Federal Rule of Civil Procedure 23(a) and 23(b)(3):

> All plans and entities for which JPMorgan Chase Bank, N.A. pursuant to a securities lending agreement, invested cash collateral, either directly or through a collective investment vehicle, in one or more debt securities of Sigma Finance, Inc. and continued to hold those debt securities as of the close of business on September 30, 2008.[8]

Thus, there is no need for the Court to certify or re-certify a class for purposes of the Settlement.

Moreover, as Ordered by the Court, the Settlement allows Class Members a second opportunity to exclude themselves from the Class and the Settlement by submitting a written Request for Exclusion on or before May 14, 2012 (or twenty-one (21) calendar days prior to the Final Approval Hearing). All Class Members that timely submit an Acknowledgement Form will be entitled to receive a *pro rata* distribution from the Net Settlement Fund.

## V.    THE PROPOSED NOTICE SHOULD BE APPROVED

### A.    The Proposed Notice Meets the Requirements of Due Process

---

[8] The Court clarified that the Class includes only those investors who held Sigma medium-term notes that were purchased in June 2007 and had a maturity date of June 2009. For purposes of the Settlement, the Parties have agreed that Class will not exclude any plan or entity solely because some or all of its investment in Sigma securities was transferred to another securities lending agent or custodian prior to September 30, 2008.

To satisfy due process, notice to Class Members must be "reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 164 F.R.D. 362, 368 (S.D.N.Y. 1996); *see also Weinberger v. Kendrick*, 698 F.2d 61, 70-72 (2d Cir. 1983) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "It is widely recognized that for the due process standard to be met it is not necessary that every Class Member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." *Prudential,* 164 F.R.D. at 368; *see also Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988). Moreover, settlement notices need only describe the terms of the settlement generally. *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986).

The Second Circuit has recognized that the mail is an "efficient and inexpensive means of communication" that generally may be relied upon to deliver notice where it is sent. *Weigner v. City of New York*, 852 F.2d 646, 650 (2d Cir. 1988) (*citing Mullane, supra,* 339 U.S. at 319, 70 S. Ct. at 660); *see also Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.,* 439 F.3d 165 (2d Cir. 2006) (use of first-class mail to send a required notice was sufficient); *Bellifemine v. Sanofi-Aventis U.S. LLC*, 07 Civ. 2207, 2010 WL 3119374, at *2 (S.D.N.Y. Aug. 6, 2010) ("mailing the Notices . . . provided sufficient notice to satisfy the requirements of due process"); *In re Initial Public Offering Sec. Litig.*, 260 F.R.D. 81, 119-20 (S.D.N.Y. 2009) (Scheindlin, J.) (approving notice by means of mailing notice first-class to each potential Class Member, posting notice on a website and publishing a copy in the national editions of several major newspapers).

In this Action, the Settlement provides for actual notice to all Class members. As set forth below, Plaintiffs' proposed means of Notice to the Class more than satisfies the mandate of due process, particularly given that the Class consists of 76 known entities. The combination of direct mailings and Internet website posting should cause actual notice to reach all Class Members.

### B.    Description of the Notice

The proposed Notice will fully inform Class Members about the Action, the proposed Settlement and the facts they need to make informed decisions about their rights. The Notice includes multiple components designed to reach the largest number of Class members possible. The Notice, attached as Exhibit C-1 to the Settlement, will be sent by first-class mail to the last known address of each Class member within ten (10) calendar days of entry of the Preliminary Approval Order. By that same date, the Notice will be posted on a pre-existing dedicated Settlement website established by Lead Counsel, along with other documents related to the Settlement and all associated Exhibits. The Notice will provide Class members with a toll-free number for Lead Counsel, an email address for Settlement-related inquiries, and a website address where Class members may receive further information.

The form and method of notice agreed to by the Parties satisfies all due process considerations and meets the requirements of Federal Rule of Civil Procedure 23(e)(1)(B). The proposed Notice describes generally, in plain English: (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) Plaintiffs' Counsel's intent to request attorneys' fees, reimbursement of expenses and Case Contribution Awards; (iv) the procedure and timing for objecting to the Settlement; (v) the date and place for the Final Approval Hearing; and (vi) the procedure to receive additional information. Accordingly, the

proposed Notice and method of dissemination satisfies the requirements of due process. *See* 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS, § 8.34 (4th ed. 2002).

## VI.    <u>CONCLUSION</u>

For the reasons discussed herein, the Settlement is a fair, adequate and reasonable resolution of the claims against Defendant JPMC Bank in this complex class action brought under both ERISA and New York law.  Thus, Plaintiffs and Plaintiffs' Counsel respectfully request that the Court grant their motion and enter the Preliminary Approval Order, which:  (a) preliminarilyy approves the Settlement of the Action; (b) approves the form and manner of the Notice of Settlement; and (c) sets a date and time for the Final Approval Hearing and related deadlines as set forth in the Preliminary Approval Order.

Dated: March 28, 2012                    Respectfully submitted,

                                         **KESSLER TOPAZ**
                                          **MELTZER & CHECK, LLP**

                                         */s/ Peter H. LeVan, Jr.* _____ _____ _____
                                         Joseph H. Meltzer
                                         Peter H. LeVan, Jr.
                                         Shannon O. Braden
                                         280 King of Prussia Road
                                         Radnor, PA 19087
                                         Telephone:  610-667-7706
                                         Facsimile:  610-667-7056

                                         ***Lead Counsel***

Of Counsel:

DEALY & SILBERSTEIN LLP
Milo Silberstein
225 Broadway, Suite 1405
New York, NY 10007

NIX PATTERSON & ROACH, LLP
Bradley E. Beckworth
Jeff Angelovich
Brad Seidel
205 Linda Drive
Daingerfield, TX 75638

BERNSTEIN, LITOWITZ, BERGER & GROSSMAN, LLP
David L. Wales
1285 Avenue of the Americas
New York, NY  10019-6028

WOLF HALDENSTEIN ADLER FREEMAN HERZ LLP
Gregory Mark Nespole
270 Madison Avenue
New York, New York 10016

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true and correct copy of Plaintiffs' Revised Motion for an Order Preliminarily Approving Settlement, Approving Form and Manner of Notice and Setting Final Approval Hearing Date, along with the Memorandum of Law and all other materials filed in support thereof, was served upon the following counsel by Notices of Electronic Case Filing generated by ECF:

> Lewis R. Clayton, Esquire
> Jonathan H. Hurwitz, Esquire
> Samuel E. Bonderoff, Esquire
> **Paul, Weiss, Rifkind, Wharton & Garrison, LLP**
> 1285 Avenue of the Americas
> New York, NY  10019 – 6064
> lclayton@paulweiss.com
> jhurwitz@paulweiss.com
>
> *Attorneys for Defendant*

Dated: March 28, 2012
      Radnor, PA

By:   */s/ Peter H. LeVan, Jr.*
        Peter H. LeVan, Jr.