UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOARD OF TRUSTEES OF THE AFTRA RETIREMENT FUND, in its capacity as a fiduciary of the AFTRA Retirement Fund, individually and on behalf of all others similarly situated,<br>        Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br>        Defendant. | Consolidated as<br>Civil Action No. 09-00686 (SAS) (DF)<br><br>ECF Case |
| BOARD OF TRUSTEES OF THE IMPERIAL COUNTY EMPLOYEES' RETIREMENT SYSTEM, in its capacity as a fiduciary of the Imperial County Employees' Retirement System, individually and on behalf of all others similarly situated,<br>        Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br>        Defendant. | |
| THE INVESTMENT COMMITTEE OF THE MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY PENSION PLAN, in its capacity as a fiduciary of the MaBSTOA Pension Plan, individually and on behalf of all others similarly situated,<br>        Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br>        Defendant. | |

**DECLARATION OF PETER H. LEVAN, JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND CASE CONTRIBUTION AWARDS TO NAMED PLAINTIFFS**

I, PETER H. LEVAN, JR., hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1476:

1. I am a partner with the law firm of Kessler Topaz Meltzer & Check, LLP ("KTMC"), Lead Counsel for Plaintiffs in this Action. I have personal knowledge of the matters set forth herein based upon my active participation in all material aspects of this Action.[1] I respectfully submit this declaration in support of: (a) Plaintiffs' Counsel's application for an award of attorneys' fees and reimbursement of expenses; and (b) Named Plaintiffs' application for Case Contribution Awards.

2. On June 1, 2009, the Court appointed KTMC (then known as Barroway Topaz Kessler Meltzer & Check, LLP) as Interim Lead Counsel for Plaintiffs Board of Trustees of the AFTRA Retirement Fund ("AFTRA"), Board of Trustees of the Imperial County Employees' Retirement System ("ICERS") and the Investment Committee of the Manhattan and Bronx Surface Transit Operating Authority Pension Plan ("MaBSTOA"), in their respective capacities as fiduciaries of the AFTRA Retirement Fund, the Imperial County Employees' Retirement System and the MaBSTOA Pension Plan (collectively "Plaintiffs" or "Named Plaintiffs"). *See* Court's June 1, 2009 Order, No. 09-CV-686 (Dkt. No. 25).

3. On August 4, 2010, as part of its Opinion and Order granting certification of the proposed class, the Court appointed KTMC as Lead Counsel for the Class. *See* August 4, 2010 Opinion and Order Granting Class Certification, NO. 09-CV-686 (Dkt. No. 62). The Court also appointed AFTRA, ICERS and MaBSTOA as Named representatives of the Class. *Id.*

---

[1] All capitalized terms not otherwise defined in this Declaration shall have the meaning ascribed to them in the Stipulation of Settlement.

4.  Lead Counsel has been responsible for the prosecution of this Action and negotiation of the Settlement, with assistance from Plaintiffs' Counsel.[2]

5.  The Settlement provides for a payment of $150,000,000 by Defendant JPMC Bank to the Class, which consists of participants of Defendant's securities lending program on whose behalf Defendant JPMC Bank invested cash collateral in medium-term notes issued by Sigma Finance, Inc. ("Sigma Notes") and continued to hold those notes, which were scheduled to mature in 2009, through the close of business on September 30, 2008. A true and correct copy of the Stipulation of Settlement ("Stipulation" or "Settlement"), which contains numerous sub-parts, is attached as Exhibit 1 to my declaration in support of Plaintiffs' Motion for Final Approval.

6.  The Settlement provides that the Class shall receive the sum of $150,000,000, net of attorneys' fees, expenses, notice and administration costs, and other Court-approved deductions pursuant to the Plan of Allocation. A true and correct copy of the proposed Plan of Allocation is attached as Exhibit 2 to my declaration in support of Plaintiffs' Motion for Final Approval.

A.  **COMMENCEMENT OF THE LITIGATION**

7.  This Action consists of three consolidated actions filed by Named Plaintiffs on behalf of themselves and all others similarly situated for breaches of fiduciary duties under ERISA (AFTRA) and New York common law (ICERS and MaBSTOA) arising from Defendant's decision to invest in and maintain investment of the Class's funds in Sigma Notes. *See* Court's April 24, 2009 Order, No. 09-CV-3020 (Dkt. No. 9); June 1, 2009 Order, No. 09-

---

[2] The term "Plaintiffs' Counsel" as used herein refers collectively to Lead Counsel as well as Nix Patterson & Roach, LLP; Dealy & Silbertstein, LLP; Wolf Haldenstein Adler Freemen Herz, LLP; and Bernstein, Litowitz, Berger & Grossman, LLP.

CV-4408 (Dkt. No. 9); *see also* Jan. 23, 2009 AFTRA Complaint, No. 09-CV-686 (Dkt. No. 1); April 23, 2009 AFTRA Amended Complaint, No. 09-CV-686 (Dkt. No. 21); March 27, 2009 ICERS Complaint, No. 09-CV-3020 (Dkt. No. 1); March 7, 2009 MaBSTOA Complaint, No. 09-CV-4408 (Dkt. No. 1).

8. The Complaints collectively allege, *inter alia*, that Defendant JPMC Bank violated its statutory duties of prudence, care, and loyalty under ERISA Section 404(a), 29 U.S.C. § 1104(a), and under New York common law, by imprudently investing and maintaining Plaintiffs' securities lending cash collateral in Sigma Notes. Plaintiffs assert several causes of action for the losses suffered by Plaintiffs and the Class as a result of the alleged breaches of fiduciary duty by Defendant JPMC Bank.

9. Defendant JPMC Bank filed substantially similar Answers to the three operative Complaints, denying all of Plaintiffs' material allegations and asserting numerous affirmative defenses. *See* Answer to AFTRA Complaint, No. 09-CV-686 (Dkt. No. 12); Answer to AFTRA Amended Complaint, No. 09-CV-686 (Dkt. No. 22); Answer to ICERS Complaint, No. 09-CV-686 (Dkt. No. 23); Answer to MaBSTOA Complaint, No. 09-CV-686 (Dkt. No 29).

**B.    PLAINTIFFS' COUNSEL'S LITIGATION EFFORTS**

10. Plaintiffs' Counsel conducted substantial merits discovery in this Action. Plaintiffs' Counsel drafted and served on behalf of Named Plaintiffs two sets of interrogatories and two sets of requests for production of documents on Defendant JPMC Bank. Plaintiffs' Counsel also responded to three sets of interrogatories and three sets of requests for production of documents served on the three Named Plaintiffs by Defendant JPMC Bank.

11. In addition, Plaintiffs' Counsel investigated, drafted and served initial disclosures on behalf of Named Plaintiffs AFTRA, ICERS and MaBSTOA.

12. Plaintiffs' Counsel also negotiated and drafted a proposed Stipulated Protective Order to govern the use of confidential information, which the Court entered on June 16, 2009.

13. In addition, Plaintiffs' Counsel issued subpoenas *duces tecum* to third-party ratings agencies, including Fitch Ratings Ltd., Standard and Poor's, and Moody's. Plaintiffs' Counsel also issued subpoenas *duces tecum* to Sigma Finance, Inc. and Sigma Finance Corp.

14. Plaintiffs' Counsel provided copies of all documents produced in response to these subpoenas to Defendant JPMC Bank.

15. Plaintiffs' Counsel also served a Notice of Deposition on Defendant JPMC Bank pursuant to Federal Rule of Civil Procedure 30(b)(6) on or around May 27, 2009.

16. Shortly thereafter, Plaintiffs' Counsel began engaging in extensive document collection, production and review. Plaintiffs' Counsel collected, reviewed and produced an initial tranche of documents on behalf of Plaintiff AFTRA on July 7, 2009 and then on behalf of Plaintiff ICERS on August 10, 2009. Plaintiffs' Counsel made multiple subsequent productions on behalf of Plaintiffs AFTRA and ICERS during the course of discovery.

17. Further, by August 2009, Plaintiffs' Counsel had also begun its review of documents produced by Defendant JPMC Bank. Plaintiffs' Counsel's review of Defendant's document production continued throughout fact discovery.

18. Around this time, Plaintiffs' Counsel also began to negotiate and facilitate the production of documents by third-party ratings agencies.

19. Specifically, on October 29, 2009, Plaintiffs' Counsel served subpoenas *duces tecum* on the records custodians of additional third-parties, including Allen & Overy, LLP, Ernst & Young LLP and Deutsche Bank Trust Company of the Americas. Plaintiffs' Counsel later served subpoenas *duces tecum* on third-parties Gordian Knot, Inc. and Interactive Data

Corporation ("IDC"). Copies of all documents produced in response to these subpoenas were provided to Defendant JPMC Bank.

20. On November 17, 2009, Plaintiffs' Counsel sought leave of the Court to issue Letters of Request to foreign courts as permitted under the Hague Convention. Plaintiffs' Counsel sought to issue eight separate Letters of Request to Alan Robert Bloom, Margaret Elizabeth Mills, Stephen John Harris, Ernst & Young LLP, Gordian Knot Limited, Stephen Partridge-Hicks, Nicholas Sossidis and Deutsche Trust Company Limited for both testimony and the production of documents related to this litigation. The Court granted Plaintiffs' Counsel's request on November 20, 2009, and Plaintiffs' Counsel issued the Letters of Request shortly thereafter. Plaintiffs' Counsel diligently pursued these Letters of Request with foreign local counsel through the close of fact discovery, and provided Defendant with copies of all documents received in response thereto.

21. Around that time, Defendant served Plaintiffs' Counsel with an informal request for documents from absent Class member New York State Common Retirement Fund ("NYSCRF"). Plaintiffs' Counsel drafted and served a response to this informal request and collected, reviewed and produced responsive documents on behalf of NYSCRF in response to this request shortly thereafter.

22. On December 29, 2009, Plaintiffs' Counsel sent Freedom of Information Act Requests for records relating to this litigation to the United States Department of Labor (both the New York regional and Washington, D.C. national offices) and the Office of the Comptroller of the Currency.

23. On that same day, Plaintiffs' Counsel served subpoenas *duces tecum* on both the JPMorgan Chase Retirement Plan and the JPMorgan Chase 401(k) Savings Plan.

24. Shortly thereafter, Plaintiffs' Counsel collected, reviewed and produced documents on behalf of Plaintiff MaBSTOA in response to Defendant's discovery request.

25. On January 25, 2010, Plaintiffs' Counsel served a Notice of Deposition concerning matters related to class certification under Federal Rule of Civil Procedure 30(b)(6) on Defendant JPMC Bank.

26. In March 2010, Plaintiffs' Counsel negotiated and executed a Stipulation Regarding Discovery of Certain Types of Expert Witness Information with Defendant.

27. While continuing to produce and review documents produced by Parties and third-parties to this litigation, Plaintiffs' Counsel engaged in extensive deposition practice. From March 25, 2010 through July 23, 2010, Plaintiffs' Counsel defended five fact witness depositions and took a total of 23 fact witness depositions,[3] including several corporate designee depositions. These depositions took place in New York, Boston and the United Kingdom.

28. In lieu of conducting additional depositions pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiffs' Counsel negotiated and executed a Stipulation with Defendant JPMC Bank, and ultimately a Revised Stipulation, regarding Plaintiffs' First and Second Federal Rule of Civil Procedure 30(b)(6) Deposition Notices.

29. Plaintiffs' Counsel served Defendant with a Notice of Deposition concerning matters related to electronically stored information under Federal Rule of Civil Procedure 30(b)(6) shortly thereafter.

30. Plaintiffs' Counsel met and conferred with Counsel for JPMC Bank throughout the entire discovery period, working diligently to resolve disputes and to ensure that discovery proceeded expeditiously. By the close of fact discovery on June 30, 2010, Plaintiffs' Counsel

---

[3] The majority of these fact witness depositions were scheduled pursuant to *Plaintiffs' Omnibus Notice of Deposition*, served on Defendant JPMC Bank on May 5, 2010.

had propounded and responded to numerous discovery requests; collected, reviewed and produced more than 111,173 pages of documents; reviewed more than 685,000 pages of documents produced by Defendant JPMC Bank; served numerous subpoenas *duces tecum* on third-parties; and reviewed more than 41,000 pages of documents produced in response thereto.

31. As for motion practice, on May 5, 2010, Plaintiffs' Counsel fully briefed a Motion for Class Certification, seeking certification of the putative class. *See* Plaintiffs' Motion for Class Certification, No. 09-CV-686 (Dkt. No. 46); Defendant's Memorandum in Opposition to Class Certification, No. 09-CV-686 (Dkt. No. 55); Plaintiffs' Reply, No. 09-CV-686 (Dkt. No. 57); Defendant's Surreply, No. 09-CV-686 (Dkt. No. 60).

32. On August 4, 2010, the Court issued an Opinion and Order, granting Plaintiffs' Motion for Class Certification, certifying the Class, appointing Named Plaintiffs as the Class representatives in this Action, and appointing KTMC as Lead Counsel. *See* Court's Opinion and Order Granting Class Certification, No. 09-CV-686 (Dkt. No. 62).

33. After the Court certified the Class, Plaintiffs' Counsel began to engage in extensive expert discovery. Plaintiffs' Counsel vetted and retained six experts; served five initial expert reports; served four rebuttal expert reports; and reviewed 12 expert reports produced by Defendant. Plaintiffs' Counsel also took seven depositions of Defendant JPMC Bank's expert witnesses and defended six expert depositions.

34. On December 17, 2010, Plaintiffs' Counsel participated in a formal mediation session in New York under the auspices of former federal judge Layn R. Phillips. Although ultimately unsuccessful, Judge Phillips remained in contact with both Plaintiffs' Counsel and counsel for Defendant through numerous telephonic mediation sessions thereafter.

35. On March 3, 2011, Defendant filed a Motion for Partial Summary Judgment on the duty of loyalty (or conflict of interest) claim. *See* Dkt. No. 82. On that same date, the Securities Industry and Financial Markets Association ("SIFMA") filed an *Amicus Curiae* Brief in Support of Defendant's Motion for Partial Summary Judgment. *See* Dkt. No. 86.

36. On March 18, 2011, Plaintiffs' Counsel responded to SIFMA's *Amicus Curiae* Brief. Then, on March 31, 2011, Plaintiffs' Counsel filed their opposition to Defendant's Motion for Partial Summary Judgment and cross-moved for partial summary judgment on the same claim. *See* Dkt. Nos. 88, 90-93. Defendant JPMC Bank filed its reply in further support of its Motion for Partial Summary Judgment on April 14, 2011. *See* Dkt. No. 95.

37. On August 5, 2011, the Court issued an Opinion and Order, granting Defendant's Motion for Partial Summary Judgment on Plaintiffs' duty of loyalty claim, and denying Plaintiffs' cross-motion. *See* Dkt. No. 99 (*Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 806 F. Supp. 2d 662 (S.D.N.Y. 2011)).

38. Plaintiffs' Counsel thereafter prepared for trial, scheduled to commence on February 6, 2012.

39. From September 12 through October 25, 2011, Plaintiffs' and JPMC Bank's Counsel fully briefed *Daubert* motions to exclude certain expert reports and testimony.

40. On December 15, 2011, the Court issued an Opinion and Order, granting in part and denying in part the parties' respective *Daubert* motions. *See* Dkt. No.130.

41. During this time, Plaintiffs' Counsel were also exchanging with Counsel for Defendant drafts and objections to certain pretrial materials, including witness lists, exhibit lists, deposition designations, proposed jury instructions, *voir dire* questions and verdict forms.

42.     Between December 12, 2011 and January 3, 2012, Plaintiffs' Counsel and Counsel for Defendant also fully briefed Motions *in Limine* regarding the exclusion and/or use of certain evidence at trial. On January 19, 2012, the Court issued an Opinion and Order, granting in part and denying in part the Parties' respective Motions *in Limine*. *See* Dkt. No. 157.

43.     On January 6, 2012, Plaintiffs' Counsel filed with the Court a Joint Final Trial Report, Trial Memorandum of Law and Trial Exhibits. One week later, on January 13, 2012, Plaintiffs' Counsel filed Proposed Findings of Fact and Conclusions of Law.

**C.    SETTLEMENT**

44.     Settlement negotiations in this case were hard-fought and at arm's-length.

45.     Informal negotiations began in December 2009, when the Parties drafted and exchanged Confidential Statements setting forth their respective positions concerning the possible settlement of the Action and met to discuss whether there was a basis to resolve the matter. *See* Declaration of Layn R. Phillips ("Phillips Decl."), filed in support of Plaintiffs' Motion for Final Approval, ¶ 4.

46.     On December 17, 2010, the Parties formally mediated this Action in an all-day session before former United States District Judge Layn R. Phillips. While the session was unsuccessful, the Parties and Judge Phillips remained in contact and participated in numerous telephonic sessions thereafter. *See id.* ¶ 5.

47.     Following multiple communications with Judge Phillips throughout January 2012, during which time Plaintiffs' Counsel were continuing to prepare for trial, the Parties reached an agreement in principle to settle all claims in this Action. *See id.* ¶¶ 7-11.

**D.    LEAD COUNSEL'S LODESTAR AND EXPENSES**

48. During the period from inception of this Action through May 4, 20120, my firm performed more than 19,708 hours of work in connection with this Action. The schedule attached hereto as Exhibit 1 is a summary indicating the amount of time spent by each attorney and paraprofessional of my firm who was involved in this Action, their time amassed, and the corresponding lodestar. The total dollar value of KTMC's time (the "lodestar") is $8,041,767.50, which is based on the current hourly rates regularly charged by KTMC. The hourly rates for the attorneys and paraprofessionals at KTMC included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted by courts in other complex class actions.

49. The hourly rates utilized by my firm in computing its lodestar are at or below its usual and customary hourly rates charged for ERISA breach of fiduciary duty and other complex litigation. No upward adjustment in billing rate was made, notwithstanding the contingency and risk of the matters involved, the opposition encountered, the preclusion of other employment, the delay in payment, or other factors present in this Action which would justify a higher rate of compensation.

50. I believe the rates charged by KTMC, a large plaintiff's class action firm with a nationwide practice, are within the range of rates awarded to attorneys practicing within the Southern District of New York, and accordingly, are reasonable in this Action.

51. The time and services provided by my firm for which fees are sought in the petition are reflected in contemporaneously maintained records of my firm. All of the services performed by my firm in connection with this Action were reasonable and necessary in the prosecution of this case. No time is included in the fee petition for work in connection with the

fee petition and expense application or accompanying documents, including this declaration and the attached declarations of Plaintiffs' Counsel.

52. My firm's lodestar figures do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in the firm's billing rates.

53. As detailed in the schedule attached hereto as Exhibit 2, Lead Counsel incurred a total of $1,078,065.94 in unreimbursed expenses in connection with the prosecution of this Action. The expenses incurred by Lead Counsel are reflected on the books and records of the firm. These books and records are prepared from expense vouchers, check records and other materials, and are an accurate contemporaneous recordation of the expenses incurred.

54. With respect to the standing of my firm, attached hereto as Exhibit 3 is a true and correct copy of my firm's resume, which includes a biography of KTMC as well as the principal attorneys involved in this Action.

E. **PLAINTIFFS' COUNSEL'S LODESTAR AND EXPENSES**

55. Remaining Plaintiffs' Counsel also spent significant time litigating this Action on behalf of Named Plaintiffs and the Class and similarly incurred reasonable and necessary expenses in connection with the successful prosecution of this Action

56. The Declaration on behalf of Nix Patterson & Roach, LLP is attached hereto as Exhibit 4 and includes the firm's lodestar and expenses incurred in connection with the prosecution of this Action, as well as a true and correct copy of the firm's resume.

57. The Declaration on behalf of Bernstein, Litowitz, Berger & Grossman, LLP is attached hereto as Exhibit 5 and includes the firm's lodestar and expenses incurred in connection with the prosecution of this Action, as well as a true and correct copy of the firm's resume.

58. The Declaration on behalf of Wolf Haldenstein Adler Freeman Herz, LLP is attached hereto as Exhibit 6 and includes the firm's lodestar and expenses incurred in connection with the prosecution of this Action, as well as a true and correct copy of the firm's resume.

59. The Declaration on behalf of Dealy & Silberstein, LLP is attached hereto as Exhibit 7 and includes the firm's lodestar and expenses incurred in connection with the prosecution of this Action, as well as a true and correct copy of the firm's resume.

F. **REQUEST FOR ATTORNEYS' FEES AND EXPENSES**

60. Plaintiffs' Counsel respectfully request that the Court award attorneys' fees in this Action in the amount of $37.5 million or twenty-five percent (25%) of the Settlement Fund ("Fee Request") plus expenses in the amount of $1,794,985.19 ("Expense Request").

61. Because district courts in the Second Circuit may apply either the "percentage of the fund" method or the "lodestar" method when determining awards of attorneys' fees in common fund recoveries, Plaintiffs' Counsel have provided the Court with the information necessary to use either method for its analysis.

62. As set forth in greater detail in Plaintiffs' Memorandum of Law filed in support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards to Named Plaintiffs ("Fee Memorandum"), Plaintiffs' Counsel respectfully submits that the Court should award attorneys' fees in this Action based on a percentage of the common fund obtained for the Class. Plaintiffs' Counsel's requested fee award falls well within, if not at the lower end of, the range of percentage fees typically awarded in the Second Circuit.

63. As further set forth in Plaintiffs' Fee Memorandum, a cross-check of the lodestar in this Action also supports the reasonableness of Plaintiffs' Counsel's Fee Request. Plaintiffs' Counsel have incurred a total of $13,106,879 in time from the inception of the Action through

May 4, 2012. The requested fee award represents a modest multiplier of only 2.86 to the lodestar.

64. Regardless of which fee calculation method is applied, district courts in the Second Circuit also consider the factors enumerated in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), when determining an award of attorneys' fees. The six *Goldberger* factors are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. 209 F.3d at 50. As set forth in greater detail in Plaintiffs' Fee Memorandum, Plaintiffs' Counsel submit that all of the *Goldberger* factors weigh in favor of granting the Fee Request in this Action.

65. To date, no objections to Plaintiffs' Counsel's request for an award of attorneys' fees have been received.

66. As further set forth in Plaintiffs' Fee Memorandum, Plaintiffs' Counsel also requests an award of reimbursement for expenses in the amount of $1,794,985.19, which were advanced or incurred collectively by Plaintiffs' Counsel while prosecuting this Action. The submitted expenses were reasonably incurred and necessary to the prosecution of this Action. Plaintiffs' Counsel submit that the Court should award Plaintiffs' Counsel's Expenses Request in full.

67. To date, no objections to Plaintiffs' Counsel's request for reimbursement of expenses have been received.

**G.    CASE CONTRIBUTION AWARDS TO NAMED PLAINTIFFS**

68.     As set forth in greater detail in Plaintiffs' Fee Memorandum, Plaintiffs also respectfully request that the Court grant Case Contribution Awards of $50,000 to each of the three Named Plaintiffs in this Action, for an aggregate award of $150,000.

69.     Named Plaintiffs expended substantial efforts and significant time in prosecuting this Action. Named Plaintiffs stepped forward and pursued the Class's interests by filing suit against Defendant JPMC Bank on behalf of the Class and subsequently undertaking the responsibilities attendant with serving as a class representative in complex class action litigation.

70.     Among other things, Named Plaintiffs reviewed draft pleadings and motions; provided information necessary to draft and serve initial disclosures; searched the files of those individuals in possession of potentially relevant documents; reviewed material case filings; presented witnesses in response to Defendant's notices of deposition who prepared and sat for day-long depositions; and communicated regularly with Plaintiffs' Counsel at all times throughout the Action. Named Plaintiffs also participated in numerous strategic decisions, including the negotiation and approval of the Settlement terms.

71.     Named Plaintiffs were extremely active in this Action, and devoted a substantial amount of time and energy to assisting in the successful prosecution of this litigation.

72.     The Declaration of Christine H. Dubois, Chief Executive Officer of the AFTRA Health and Retirement Funds, is attached hereto as Exhibit 8 and further details Plaintiff AFTRA's substantial commitment of time and resources to the prosecution of this Action.

73.     The Declaration of David H. Prince, retirement administrator for the Imperial County Employees' Retirement System, is attached hereto as Exhibit 9 and further details Plaintiff ICERS's substantial commitment of time and resources to the prosecution of this Action.

74. The Declaration of Anthony M. Patten, Secretary of the Investment Committee that oversees the assets of the Manhattan and Bronx Transit Operating Authority Pension Plan, is attached hereto as Exhibit 10 and further details Plaintiff MaBSTOA's substantial commitment of time and resources to the prosecution of this Action.

75. To date, no objections to Plaintiffs' Counsel's request for Case Contribution Awards to Named Plaintiffs have been received.

Dated: May 7, 2012

/s/ *Peter H. LeVan, Jr.*
Peter H. LeVan, Jr.
KESSLER TOPAZ
 MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610-667-7706
Facsimile:  610-667-7056

**Lead Counsel**