UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

BOARD OF TRUSTEES OF THE AFTRA
RETIREMENT FUND, in its capacity as a
fiduciary of the AFTRA Retirement Fund,
individually and on behalf of all others
similarly situated,

      Plaintiff,

 - against -

JPMORGAN CHASE BANK, N.A.,

      Defendant.

------------------------------------------------------------ X

BOARD OF TRUSTEES OF THE
IMPERIAL COUNTY EMPLOYEES'
RETIREMENT SYSTEM, in its capacity
as a fiduciary of the Imperial County
Employees' Retirement System,
individually and on behalf of all others
similarly situated,

      Plaintiff,

 - against -

JPMORGAN CHASE BANK, N.A.,

      Defendant.

------------------------------------------------------------ X

**MEMORANDUM
OPINION AND ORDER**

09 Civ. 686 (SAS)



THE INVESTMENT COMMITTEE OF THE MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY PENSION PLAN, in its capacity as a fiduciary of the MaBSTOA Pension Plan, individually and on behalf of all others similarly situated,

                              Plaintiff,

- against -

JPMORGAN CHASE BANK, N.A.,

                              Defendant.

---------------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

This class action arises out of JPMorgan Chase Bank, N.A.'s ("JPMC's") investment of certain "securities lending" clients' cash collateral in the June 2009 Medium-Term Notes (the "MTNs") of Sigma Finance, Inc. ("Sigma"), a structured investment vehicle ("SIV") that collapsed on September 30, 2008.[1] Class members governed by the Employee Retirement Income Security Act

---

[1] I granted plaintiffs' motion for class certification on August 4, 2010. *See Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010).

2

("ERISA") assert claims for breach of the fiduciary duty to prudently manage plan assets. Class members not governed by ERISA assert analogous prudence claims under New York common law, in addition to breach of their securities lending agreements with JPMC.

On March 28, 2012, the parties executed a Stipulation of Settlement ("Stipulation") that settled these claims and related third-party claims in exchange for $150 million in cash or credits towards Sigma Collateral Deficiencies.[2] Following the Court's preliminary approval of the proposed settlement,[3] plaintiffs moved for Final Approval of Settlement, Approval of Class Notice, and Approval of Plan of Allocation.[4] Plaintiffs' counsel also moved for an Award of Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Award to Named Plaintiffs.[5] A fairness hearing was held on June 4, 2012, and no objections were raised. I orally approved the settlement at the fairness hearing and entered final judgment on June 5, 2012. For the reasons stated below, plaintiffs' counsels' motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Case

---

[2] Capitalized terms not defined herein have the meaning given to them in the Stipulation.

[3] *See* 3/30/12 Order [Docket No. 178].

[4] *See* Docket No. 180.

[5] *See* Docket No. 185.

Contribution Award to Named Plaintiffs is granted.

## II. ATTORNEYS' FEES AND EXPENSES

Plaintiffs' counsel request $1,794,985.19 in expenses. In support of these expenses, plaintiffs' counsel have submitted a summary expense report for each firm.[6] These costs include routine expenses relating to copying, court fees, postage and shipping, phone charges, legal research, and travel and transportation. The bulk of the expenses relate to trial preparation, experts, and document production and review.[7] No objections were filed to these expenses. The expenses total approximately one percent of the Settlement Amount.

I find that these expenses are reasonable. These expenses, particularly those attributable to professional services and trial preparation, were a contributing factor to achieving the settlement.[8] Accordingly, I grant plaintiffs' counsel $1,794,985.19 in expenses.

In addition to expenses, plaintiffs' counsel also request a fee of

---

[6] *See* 5/7/12 Declaration of Peter H. LeVan, Jr., plaintiffs' counsel, in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Award to Named Plaintiffs.

[7] *See id.*

[8] *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004).

twenty-five percent of the Settlement Amount, or $37.5 million.[9]  Although I intend to use the percentage method to award fees in this matter, the lodestar is often used as a cross-check.  Plaintiffs represent that the aggregate loadstar for all plaintiffs' firms is $13,106,879 for 28,860 hours.[10]  Thus, the requested fee represents a multiplier of 2.86.  Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable.[11]  After reviewing the supporting declarations, which include a summary of the hours expended by and the billing rates for every attorney, paralegal, and staff member that worked on this litigation, I find that $13,106,879 is a reasonable lodestar for the time expended by plaintiffs' firms.

I further find that a fee of twenty-five percent, or $37.5 million, is reasonable after assessing the *Goldberger* factors.  This fee is well within the

---

[9] *See* Memorandum of Law in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Award to Named Plaintiffs at 1.

[10] *See id.* at 20.

[11] *See Goldberger v. Intergrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (citing *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 342 (3d Cir. 1998) ("Of course, where [the lodestar is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.").

standard range for fee awards given under *Goldberger*.[12]

*First*, I find that the time and labor expended by plaintiffs' counsel support a 25% fee. Plaintiffs' counsel have invested approximately 28,860 hours in these actions. Plaintiffs' counsel took the case to the eve of trial, litigating a class certification motion, a partial summary judgment motion, *Daubert* motions, and motions *in limine*. They also expect additional time to be expended administering and distributing the settlement funds. Plaintiffs' counsel have devoted substantial time and effort to this matter, justifying the awarded fee.

*Second*, this action, like many ERISA class actions, has been complex and time consuming. The awarded fee is reasonable compensation considering the size of this litigation.

*Third*, the risk of this litigation also supports the awarded fee. "It is well-established that litigation risk must be measured as of when the case is filed."[13] As discussed at the fairness hearing, there were ample risks to plaintiffs establishing liability and damages. I find that a risk multiplier of 2.86 over the

---

[12] *See* Theodore Eisenberg & Geoffrey Miller, *A New Look at Judicial Impact: Attorneys' Fees in Securities Class Actions After* Goldberger v. Integrated Resources, Inc., 29 Wash. U. J.L. & Pol'y 5, 18 (2009) (noting that mean and median fee awards under *Goldberger* have been 26.03% and 27.25%, respectively).

[13] *Goldberger*, 209 F.3d at 55 (citations omitted).

estimated lodestar adequately compensates plaintiffs' counsel for the risk they assumed.

*Fourth*, I find that plaintiffs' counsel ably represented the interests of the Class. This class consisted entirely of sophisticated institutional investors. These class members had access to counsel, advisors, and consultants. Yet none of these class members objected to the fee request, or sought to opt-out and pursue their claims separately, despite two opportunities to do so. Indeed, the class representatives negotiated the 25% fee, and arms-length negotiation of the fee is a significant consideration because the court's primary goal in awarding attorney's fees is to approximate the prevailing market rate for counsels' services.[14] Moreover, plaintiffs' counsel obtained releases of certain claims against class members as part of the settlement. Finally, I note that every class member affirmatively signed an acknowledgment form signaling an endorsement of the request for attorney's fees. Plaintiffs' counsels' diligent representation of the class, as acknowledged by the class representatives and the class members, supports the awarded fee.

---

[14] *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.2d 182, 184 (2d Cir. 2008) ("[T]he district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively.").

*Fifth*, I find that a 25% fee is reasonable in relation to the settlement. Plaintiffs' counsel has obtained a substantial settlement justifying an award of a substantial amount.

*Sixth*, I find that the awarded fee is adequate to further the public policy of encouraging private lawsuits to protect investors. Plaintiffs' counsel will recover nearly three times their lodestar and will recover all expenses invested in these lawsuits. In these actions, a 2.86 multiplier of the lodestar is more than sufficient to further public policy goals.

After reviewing the *Goldberger* factors I award plaintiffs' counsel fees of 25% of the Settlement Amount, or $37.5 million. I find that a risk multiplier of 2.86 is adequate, but not excessive, in light of the *Goldberger* factors.

This fee should therefore adequately compensate – but not overcompensate – counsel for their time and labor. The award of fees and expenses are intended to compensate plaintiffs' counsel for all of the time and labor spent until the conclusion of this litigation, including that associated with the distribution of the settlement fund.

### III. CLASS REPRESENTATIVES

Class Counsel also request $50,000 as a contribution award for each of the three named plaintiffs. I find that the named plaintiffs diligently performed

the tasks expected of them and reasonably incurred costs and expenses in responding to document requests and interrogatories, producing responsive documents, reviewing filings, attending depositions, and communicating regularly with plaintiffs' counsel. Accordingly, I award each of the named plaintiffs a contribution award of $50,000.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Award to Named Plaintiffs is granted. The Clerk of the Court is directed to close this motion [Docket No. 185]. This case, and all related cases, shall remain closed.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         June 7, 2012

- **Appearances** -

**For Plaintiffs:**

Joseph H. Meltzer, Esq.
Peter H. LeVan, Jr., Esq.
Barroway Topaz Kessler Meltzer &
    Check, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706

Milo Silberstein, Esq.
Dealy & Silberstein, LLP
225 Broadway, Suite 1405
New York, New York 10007
(212) 385-0066

Gregory M. Nespole, Esq.
Wolf Haldenstein Adler Freeman
    Herz LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4761

Bradley E. Beckworth, Esq.
Brad Seidel, Esq.
Nix Patterson & Roach, LLP
205 Linda Drive
Daingerfield, Texas 75638
(903) 645-7333

David L. Wales, Esq.
Bernstein, Litowitz, Berger &
    Grossman, LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 554-1400

**For JPMC:**

Lewis Richard Clayton, Esq.
Jonathan H. Hurwitz, Esq.
Samuel E. Bonderoff, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3215